The next case for argument is 21-2112, Wireless Protocol v. TCT Mobile. Counsel will read it to you. Mr. Naruzi? Yes, Your Honor. Thank you. And may it please the Court, this case returns before the Federal Circuit for the second time. It has been pending since 2016, and it was remanded by this Court after a prior erroneous decision by the PTAB on a narrow issue, which was the application of a corrected claim construction. Rather than confine its decision in the proceedings to that narrow issue, the Board expended 21 months on remand and addressed and allowed and ultimately relied upon an entirely new theory of patentability that was not only never presented in the original petition, but was never raised in any shape whatsoever in the original trial proceeding prior to the first appeal. All aspects of that conduct by the Board are erroneous. First of all, Your Honors, the length of the proceeding on remand, 21 months, is far beyond a reasonable period. Would you mind getting to the second issue? That I find actually quite substantial, not so much the timing question. Yes, Your Honor. To me, it's the only issue that you've got going for you, so just spend all your time on that. Okay. Well, thank you for your guidance, and I'm happy to focus on the second issue, which is whether the Board's decision to allow a new theory for the first time on remand was proper. Of course, it was not, Your Honors. It was not proper under SAS Institute. It was not proper under congressional statute that enables inter-parties review, and it was not proper under— When you say SAS Institute, you mean Supreme Court's SAS Institute, not CAFC's SAS Institute. Yes, Your Honor. That's correct. Which maybe pushes in the other direction. And I'd be happy to address that as well. So, of course, the Supreme Court's decision in SAS Institute tells us that it is the petition that controls, and this court has numerous precedents that are consistent with this delineation that arises as well in this case, between what new sort of arguments or articulations fall within the zone of proper or appropriate once an inter-parties review has been instituted, and which ones fall within the zone of improper and outside of the scope of the Board's ability to permit. And the delineation is simply between new theories post-institution versus elaborations of existing theories and evidence and argument. And the cases that define those delineations, for instance, Your Honors, are Hennepenny, 938F3D at 1331. So let me organize this way. Examples of cases that stand for the proposition that new theories post-institution are not allowed. Hennepenny, 938F3D at 1331. In that case, the additional reliance by the petitioner on a teaching from one of the prior art references that was already relied on in the petition, that was not permitted. Right. I think we're familiar with the case law. You cited some cases. The other side cited some other cases. Can we talk about the meaning of Sass, the Federal Circuit Opinion, where this court remanded that IPR back to the Board for consideration of a claim construction that the petitioner had never advanced? Yes, Your Honor. And seemingly, inherently, in that remand order was an expectation that the petitioner would be able to say something on remand that went outside the four corners of what the petitioner said in its petition. The petition was clearly directed at a specific conception of graphic representations of data flows. And then the Board at the tail end of the IPR came up with a different, significantly different understanding of that claim term, a narrower claim term that the petition didn't contemplate, the petitioner did not foresee. And so the petitioner never directed any unpatentability challenge to that, a new, different, narrower claim construction. And yet, in our opinion, we remanded that case to give the petitioner a shot at addressing the patentability, unpatentability of the claims in light of that narrower claim. So wouldn't you have to agree that in Sass there was an understanding that there was going to be some kind of unpatentability theory advanced by the petitioner on remand that would be different than the petitioner's theory presented originally in the petition? No, Your Honor, I wouldn't agree with that. And let me address Sass at two levels. First of all, Sass is, for all the reasons that you described, because of the factual circumstances that you described, inapplicable at all to this case. Because, in fact, TCT conceded, and it is in the record that the construction… Okay, just stay with me on Sass. I'm just trying to think through the meaning and consequence of Sass. Why is my summary of Sass wrong? That's what I need to hear from you. I wouldn't say that your summary of Sass is wrong, Your Honor. I would say that the conclusion that you asked me whether I would concede should be drawn as to what happens permissively on remand from Sass is not consistent with the board's own views in its Standard Operating Procedure 9 and also not consistent with the… Well, forget about something called Standard Operating Procedure 9 at the PTAB. We're looking at the Federal Circuit opinion in Sass. The Federal… The Federal said everybody got the – this is the claim construction. Now go back and determine patentability, unpatentability under this claim construction, which is a different claim construction than the one the petitioner proposed in its petition. Why isn't that opening the door and commanding the board to consider a theory of unpatentability that's different from the unpatentability theory advanced in the petition? Because, Your Honor, the petitioner can address the new construction based on the evidence and theories that were in its petition. And the burden lies with the petitioner to correctly identify the constructions on which its theory relies from the outset in the petition. That's in the regulation. So the petitioner with its petition, just as it chooses the prior art that it wants to rely on, just as it chooses the theories of combination and motivation and such that it relies on… So your answer is that in your petition, you have to conceive of what the likely possibilities are for the claim construction here and then put forth a theory with respect to different claim constructions and anticipate this? And if that's your – if that's what you're saying, then why would we – maybe that's true, but why would we have allowed, Judge Chen's question, a remand in Sass when there was a new construction? What was the purpose of the remand? To just repeat what you already said in your petition? No, Your Honor. Sass arises out of a particular circumstance where the construction at issue was a new one created by the board in its final decision as to which neither party had notice or an opportunity to address, and therefore it was completely unbeknownst to the parties. And in that circumstance, there should be a right and there is a right for both parties to the extent it implicates them to say, well, now in light of this construction, let me respond, board. Let me tell you why I think we can still prevail on the record in light of your new construction. That is very consistent with this court's cases. But in that circumstance – so now I think I'm hearing a little bit of a change in your position. In that circumstance, if the original assertion is obvious but it doesn't detail whether it's obvious to modify, that in that circumstance at least the board – the petitioner would be allowed to present an alternative theory for the first time of modify – obvious to modify? No, Your Honor. Well, what could he do then that he – what could he do they hadn't already done before he saw the new claim construction? So, Your Honor, there are plenty of circumstances where a claim construction as stated does not necessarily resolve the party's dispute against one party on its face. And so in those circumstances, for example, in this posture, the petitioner could say, well, notwithstanding that construction that has now been issued by the board or the federal circuit, here are my original arguments and evidence that I presented at the trial below and we still prevail. Earlier you had said the phrase, on this record. And so your understanding of SAS is that any permissible remand in SAS would have – SAS would have been relegated to just the evidence in the record to remake its case for unpatentability under the new claim construction. Is that your argument? I'd like to make clear that SAS does not address this issue. I know. I understand. Yes. What we're trying to tease out together right now is what is the meaning and consequence of SAS. I think the meaning – yes. So what is – what is your understanding of what could have happened in SAS and why is that your understanding of what could have happened in SAS? I think what – our understanding of what could have happened in SAS is exactly the subject of what we detail in our briefing, and that is that the board, on remand, is allowed and probably should receive briefing from both parties as to the impact of the construction on the proceedings and whether a party prevails or not in light of a new construction based on the arguments and evidence that exist and elaborations on the argument and evidence without venturing into the realm of new theories. And new theories certainly includes modifications to the obviousness combination or the prior art that were never proposed before. And so that is our understanding of the circumstances implicated by SAS. Okay. And then the question is if in SAS there was necessarily an adjustment to the original prima facie case of unpatentability because the original prima facie case of unpatentability rested on believing that the claim meant X and now the claim means Y. So now obviously there's something that's got to change in the petitioner's prima facie case of unpatentability in order to redirect its attack away from X and towards Y. Your Honor, I don't agree with that. So if we look to the context, for example, of district court proceedings, which are much more open-ended, right? I mean, inter-parties review is a much more tightly bounded process that is meant to be expeditious, that is meant to be limited in its scope, that has a lot of prerequisites on the petitioner. But even in the context of district court proceedings, constructions that are reached in the case can be fatal and dispositive. And it is not the case that a party— SAS federal circuit opinion. Well, because— The claim construction, which was different from everything the petitioner premised its theory on, was changed and the petitioner still got to fight another day. But it did not get to present a new theory. That never happened in SAS. And secondly, the reason that it went back on remand rather than this court disposing of it right here on appeal was that this court does not take upon itself to decide what the consequence of a new construction is on the evidence of record. It sends it back to the board. But that does not necessarily mean, and it certainly should not mean in our view, that then the proceeding opens up anew to essentially a new petition. This court doesn't reach the factual determination of the impact of the construction on the existing record, but that is not the same as saying that a new construction allows for the creation of an entirely new record with new theories. That's not consistent with the structure of inter-parties review in our view, Your Honor. Do you happen to know what happened when SAS finally returned to the board? Yes, Your Honor. I believe, to the best of my recollection, what happened is that they presented their arguments. They? SAS did on the existing record. And both sides argued about the construction. No one even put in a new declaration from an expert. I don't think they even asked for that. And so that case was resolved even with far less exchange of new argument and evidence than what we say is permissible. I have a note to myself, or a note to me, that says that SAS did submit a supplemental declaration when it finally got before the board. I believe that... Not a new theory in whatever the term theory means, which is a big problem, the uncertainty of what that term might mean. But that there was some kind of new submission, not just lawyer argument. It may be the case that they submitted some very limited evidence on the existing theory that they had very tightly cabined to what they said before. But to the extent I misspoke, I apologize. So I'm happy to clarify. Can I gather the case settled before our ruling? Yes. Can I just, to summarize in my mind, where you started is the heft of your argument is based on the Supreme Court's decision in SAS, and the language about how the petitioner controls the petition, and the petition is what we're doing here, right? Your Honor, I wouldn't say that's the heft of our case. I would say that is one of several pillars of the overall proposition, which is that there is a bounded scope to inter-parties review proceedings as to the theories. And on the one hand, you can elaborate later on as to the theories that you presented. But on the other hand, you cannot present new theories, new grounds of unpathetability, certainly, or new motivations. Well, I guess what I'm clear is you're right. There are a lot of cases, and we have impressions about what they're saying. And they all arise under weird, different circumstances, like new here, new in reply, et cetera. But in Ariosa, which is one of the cases cited by one of you, we remanded. It was a different circumstance. It was about the reply brief. And we said, we do not direct the board to take new evidence or even to accept new briefing. The board may control its own proceedings consistent with its governing statutes, regulations, and practice. And then it cites 42.5A, which says only the board can determine the proper course of conduct in a proceeding. So notwithstanding what some of our cases have said under certain circumstances, why can we not conclude that the board has enormous discretion here? We're not talking about new pieces of prior art that never showed up before. We're talking about changes, some shape, modification of what may have been in earlier construction. Why isn't the real answer to this the board gets to decide? That's left to the board. For heaven's sakes, the board decides whether to institute, and we can't even review that. So why isn't this more appropriately viewed as something that we leave to the board? Well, Your Honor, you can certainly review this. So the institution decision— No, I didn't mean to suggest it's not reviewable. I understand. My point is that institution circumstance is a very specific exception. I wouldn't take that to extend as some general rule. Yeah, but the board controls the trial. The board is the controller of that, and we give enormous deference to jury trials. We give some deference in many circumstances to district courts. So why isn't this—in a slightly different context, but why isn't this Ariosa language sufficient? And we said something in our earlier opinion in this case, too, which seemingly left arguably some discretion to the board to make these determinations about what to do on remand. What it considers to be new and different, what it considers to be permissible given the changed circumstances. Why isn't that just a matter—and the standard review is abuse of discretion, right? Yes, Your Honor. And so I believe the answer to your question is that the regulations that govern the board's discretion and the scope of its authority for the context of interparties review require that the petition state with particularity the bases for its invalidity theories, citing to specific portions of the evidence and explaining with evidence how it is that the claims are rendered unpatentable. And that doesn't mean that post-institution the petitioner cannot say one word other than what's in their petition. We're not saying that. But it certainly does mean that when you present a petition and the petition says, here's how the claim limitation is met, there's a packet standby state and that meets the claim limitation and you don't say anything about a modification. And then we demonstrate that, well, your theory is premised on a wrong claim construction. And the other side comes back and says, no problem. Let's just change the prior art to now match the claim construction. That's outside the scope of the level of particularity that's required by the petition. And therefore, the board does not have the discretion to allow this kind of supplementation to the petition with new arguments and theories of that nature that go beyond anything the petition disclosed at the outset. Thank you. We'll reserve some of those for the other side. Thank you, Your Honors. May it please the Court. My name is Jacob Snodgrass with PV Law on behalf of Al Pebblese. This Court in SAS v. Compliments Off stated, what concerns us is not that the board adopted a construction in its final written decision, as the board is free to do, but that the board changed theories in midstream. That this Court remanded that case to the board is indicative that this Court countenances the board considering new theories. Do you think in SAS what you just quoted, that it would have been permissible for the petitioner on remand to completely scrap the references it had been relying on all along and find new references in light of the new claim construction and build a new unpatentability ground from ground up? Your Honor, I don't believe that's what the petitioner attempted to do in SAS. That's not what we're attempting to do. If you could answer the question, that would be great. Your Honor, if the patent owner was provided notice and an opportunity to be heard, the patent owner had notice and an opportunity to be heard. If that was a new set of references, then the patent owner would not have been able to complain as to lack of a notice and opportunity to be heard. So in your mind, the petitioner could be completely divorced from the original petitioner, a completely brand new petition on remand? Your Honor, it depends on where that shift occurs in the proceedings. So long as it occurs before a patent owner is provided notice and an opportunity to be heard, then the patent owner is not able to complain that they lacked notice and an opportunity to be heard. If there's some other structure in a statute or regulation... Let me just try to separate things. The Rovalma opinion is an indication of this, right? Yes, Your Honor. That has two separate sections that address two separate constraints on the board. One is the APA notice and opportunity to be heard. Separate section is a set of constraints, the Supreme Court, SAS Institute, 312 of the statute, regulations 42.104, 42.3, are not notice and opportunity constraints. They are constraints of the IPR process. SAS did the notice and opportunity one, and that's all you're talking about here. I think what we've been exploring here is what are the boundaries of the other set of constraints, not the APA notice and opportunity ones, but the boundaries on the IPR proceeding, which as a starting point require the petition to do everything, not to change later. And I think, Judge, what we've been exploring a lot here, but what Judge Chen in particular was asking was that first set of constraints, not the APA notice and opportunity constraints, the boundary constraints, would that allow the board to say, go ahead with new references, a completely new theory that says, okay, we're not talking about disclosure anymore. We're now talking about combinations. How broad does that go? Where is the line? Again, put aside notice and opportunity, which is a separate set of constraints. That's what this case is, what's hard about this case, figuring out that. Your Honor, I don't believe that any of the statutes or regulations that WPI has cited mean to freeze the petition at any particular point in time. I believe that they establish certain thresholds that a petitioner must satisfy in order to institute IPR, but I believe that the board and this Court has recognized that the evidence can change. References can be added. The board can rely on references cited in the final written decision that are not in the petition. This Court has affirmed board decisions to that effect. Can you name a couple? Put aside, was it Genzyme, which was talked about, using something that was actually referenced as a piece of confirmatory evidence for a combination that was separately stated. What else? Did I get the name right, Genzyme? Yes, Your Honor. That would be one example. Anacor Pharmaceuticals is another, along the same lines, Your Honor, 889 F3rd 1372. Not a new ground, but evidence to buttress what a person of ordinary skill in the art would understand. Suppose we thought that our cases generally, based on certain foundations, a combination of SAS and the statute and the regulations and whatnot, require some sort of circum... some kind of limits. So it's not enough to say, well, of course, that doesn't forbid all evidence. That's just a red herring. What are the limits? Do they allow the kind of thing Judge Chen was asking about to say, you know, on reply, I've got some new references, I've got whole new combinations, references that never appeared in this proceeding, and if not, then let's start backing up to whatever the line is. Yes, Your Honor. And what we have here, and I welcome the opportunity to answer that, what we have here is a very modest modification from the original question. So that's why this has not been thoroughly briefed. What are the extents? What is the extent to which a ground and a petition can be crystallized and can be clarified through the proceeding? And what we have here is a very modest modification. So what's the principle that makes this modest? One thing that I think is true of this case, which, you know, doesn't use the term modest, is the theory or the basis for invalidity has now gone from Sen discloses this to a change in Sen would have been obvious because a skilled artisan would be motivated to make it with reasonable chance of success, requiring, among other things, new evidence for the prima facie case. Your Honor, what makes it modest is that every positive limitation in the 991 patent claims is disclosed in Sen for the reasons set forth in the petition. The only point of distinction that was raised late in this proceeding, in particular in the prior appeal, was a negative limitation regarding the term grant-pending absence state. This court construed that term to prohibit... Why does it make a difference, whatever the difference between positive and negative limitations may be, why should that make a difference in the scope of the ability to expand upon the words used in the petition? Your Honor, in this particular instance, the negative limitation is satisfied by turning off functionality in Sen that the petition never relied on. The petition relied on functionality in Sen going from a packet standby state 44 to a packet transfer state 42 via the sending of a control packet requesting more data. The board below found that Sen discloses an alternative embodiment in which user payload data can be sent to transition a mobile station... Is that an alternative embodiment? I thought that was your argument, that there were two alternative embodiments in Sen. You're right, Your Honor. The question was whether those are two distinct embodiments. The board found that that is a different way of getting from packet standby state 44 to packet transfer state 42. The board held, as WPI argued, in all instances, WPI discloses both. WPI provides... Excuse me. Sen provides both. The option to go... This is arrow F in Figure 4 of Sen. Travel along arrow F, either of those two options. We never relied on a mobile station making that transition by sending a user payload data packet. And so our proposed modification to satisfy the negative limitation is turning off functionality that was never relied on at any point during the proceeding. But that required you to submit, as you did submit, a new declaration from your expert about why a relevant skilled artisan would be motivated to do that. And it went on for a number of pages. Material that was never in the proceeding until then. And then it generated a opposing declaration that, again, went on for many pages to say, here are the reasons that we think a relevant skilled artisan would not do that. Like, why would you sacrifice a functionality when you could dial down the data piece to a tiny piece that wouldn't then interfere with other people's uses? I don't mean interference in a frequency sense. Wouldn't deprive others of bandwidth that they might be able to use. Why would you get rid of it to zero? And this was a completely new factual dispute about what skilled artisans would have been motivated to do or not do that was completely different from anything in the petition or the reply. Yes, Your Honor. And we did not see that argument until the prior repeal. If you look at what was argued below by WPI, this is appendix pages 2041 through 2042. This is the patent owner response. This is where they're making an argument regarding the penultimate limitation of claim one of the 991 patent. This is a transitioning step. Transitioning the CPE, customer premises equipment, from the grant-pending absent state to the grant-pending state after the CPE receives a bandwidth grant. The argument there, 2041 through 2042, was all about the timing of that transition relative to the bandwidth grant. WPI conceded that SIN discloses a transition. But I read those pages as saying the problem here is there's no transition from one state to another state triggered by a bandwidth grant because before the bandwidth grant, data transmission is occurring in SIN. After the bandwidth grant, data transmission is going on in SIN. So how can we say there's any transition occurring at the bandwidth grant point when there's data transmission going on on both sides? Your Honor, I think the concluding sentence of that paragraph, which bridges 2041 through 2042, is helpful. Thus, petitioner fails to address, quote, after a subsequent bandwidth grant is received at the CPE. That was the focus of WPR's argument. It was all about the timing, the transition, relative to the receipt of the bandwidth grant. Now, as petitioner, TCT has APA rights as well. A notice is an opportunity to be heard on its theories. When this new claim construction comes down after the original trial, TCT rightfully was provided an opportunity to show the unpatentability of the 991 patent claims in view of SIN. And the record should not have been frozen at any point. To accommodate shifts in theories from the patent owner, claim constructions that come down from the board or are advanced by a patent owner late in the proceedings, there should be some flexibility built in. To answer Your Honor's point, I don't know that there is a hard and fast line as to how much flexibility should be allowed relative to the original petition, but there should be some flexibility. And this case right here... Is there... Do you have any other case in which a shift was allowed from a... To take one example, this example, from a this art teaches this element to it would be obvious to modify the teaching in the following way supported by a new declaration. I couldn't find anything that fit that category, but... Your Honor, we're not aware of anything that fits those facts precisely as well. There's one, but it goes against you. That's AMC, right? Well, Your Honor... Not precedential, but nevertheless... Your Honor, I'm not sure that really any of the authorities cited by WPI go against us.  to accept certain evidence is not delineating a line between acceptable and unacceptable. It is merely deferring to the board's discretion as to how... Suppose it were the case, and as far as I can tell, it is, that the board, every time it sees something akin to this, that is something that requires to use the language of the patent trial guide, which was picked up in Intelligent Biosystems, that says, it's too big a change if what you have to do is add evidence to make out your prima facie case that you didn't need before. That's certainly this. And suppose it were the case that the board has consistently said, no, we won't let you do that. What would we make of that, even if the director could, by regulation, come up with a different rule? Your Honor, I don't believe much should be taken from that. In many of these instances, if not all, the board is finding that the petitioner has failed to put forward arguments that it could have put forward. The petitioner may, for example, put forward an argument regarding a motivation to combine. The patent owner comes back in a response and argues against that motivation, and then the petitioner then tries to backfill their petition. And those are instances where the petitioner should have seen the arguments coming from the patent owner. Here we have a negative limitation that does not appear from the terms of the patent claims. This is a negative limitation that's extracted from the specification under the umbrella of grant-pending absent state. This is not something that the petitioners could reasonably have been expected to anticipate at the petition stage. Your petition, though, points out that, in your view, the packet standby state of SIN doesn't transmit any data. I mean, the petition reads as if it contemplates an understanding that there is no data being transmitted during the grant-pending absent state, because look at this packet standby here of SIN, which is not transmitting any data. Yes, Your Honor, and all the way through until the second final written decision. I guess that's my response to your point that this was some big surprise that grant-pending absent state could not be permitted to send any data during that state. Yes, Your Honor, and it was our position all the way through the second final written decision that SIN discloses two mutually exclusive embodiments, one where there is a bandwidth grant awarded after a mobile station sends a control packet requesting more data, separately the user payload data embodiment where a mobile station transitions over arrow F. So is it your view here that if, in your petition, you said SIN discloses all of these claim limitations, it's a Section 102 anticipation, and then the patent owner response comes back and says, no, it's not a 102 because SIN, its packet standby state is actually transmitting data, and so therefore it is not a grant-pending absent state, as that term is understood by my lexicography and my specification. Are you saying that in your reply you'd be allowed to say, oh, well then, under that understanding of grant-pending absent state, let me adjust my SIN 102 to a SIN 103, and here are all the reasons my expert explains why it would be obvious to modify SIN to render the claim obvious. Can you move from a SIN 102 to a SIN 103 on reply? Yes, Your Honor. And I believe Administrative Patent Judge Weatherly noted that he would have permitted TCT to make that change had WPI raised its claim construction argument during the first appeal. In that circumstance, Your Honor, it would have been just as modest of a modification from the petition, and what we have here is 103 in view of SIN from the filing of the petition all the way till today. So if we were to write an opinion in your favor, it sounds like the principle we'd have to rely on is modest modifications, not any modification. If it's a modification we think is, you know, not so radical, then it's okay to migrate away from the actual prima facie case of unpatentability of the petition. Is that the model you're urging? Your Honor, this Court need not go further than so long as the grounds remain static, the Board is entitled to administer its proceedings as it sees fit, because, again, we had 103 in view of SIN in addition to Ridnell and an applicant-admitted prior art, which fell by the wayside throughout the proceeding as the theories crystallized. But 103 in view of SIN has been the ground from day one. So this Court need not go further in this case than same ground that that's permissible. If there's nothing further? Thank you. Thank you, Your Honors. We'll restore three minutes before. Has this patent expired? I believe it has, Your Honor, although I'm not 100% positive, but I believe it has. Yeah. I guess you have pending litigation. The patent may not have expired. I think it may have a short amount of life left. A little bit of PTA. Your Honor, I'm sorry? A year and a half. The question of line drawing was raised a number of times during the Appellee's argument, and I'd like to address that line drawing question in the following way. In every legal proceeding, somebody has to get it right or else they lose. One party, not both. That's what the meaning of the burden is. Ultimately, in inter-parties review proceedings, the burden is on the petitioner. If they do not get it right, and the patent owner points that out, the petitioner doesn't get to go back over and over and say, whoops, sorry, you're right. I messed up. I didn't get it right, but I can fix it. How about this? Nope, that's still not right. Okay, okay, sorry. I didn't get it right that time either. How about this? There is a burden. That burden rests with the petitioner. If they don't get it right, then their petition doesn't prevail. That's what happened here. And there's nothing unfair about drawing the line where Congress drew the line, where the burdens have been allocated. As to the question of, you know, what about, well, we draw the line at, it was a 103 theory before, and it's still a 103 theory now, so that's good enough. Well, Your Honors, I don't think that's an accurate representation of what happened here. I think Judge Toronto, for example, summed up the vast difference between the 103 theory that was presented in the petition and the issues that were then discussed on remand. Simply calling a theory one of obviousness can't be a magical incantation to allow any obviousness combinations and modifications that one can later conceive to be brought up at any point in the proceeding. That would not be consistent with the time limits of interparties review. It would not be consistent with the burden allocations of interparties review. And we see the consequences of that approach here, where we've had a remand of more than 21 months that exceeds the length of the trial, that seems, in Apolli's view, to have no limits whatsoever. According to Apolli, apparently this remand could have gone on for another three years, and it would have been fine. That's the problem that I would ask this Court to consider as the issue that it needs to be concerned with and resolve. Did you have an alternative theory that all of this was waived because they were on notice as of the time of your original Pat Nono response? Do you have submitted any kinds of arguments about claim construction or possible adjustments to their original theory in light of your competing claim construction? And so, therefore, there was no actual room to do anything because essentially it was waived and forfeited by not having been raised in the original reply. Yes, Your Honor, we made that point. And just to speak to that quickly, the entire foundational premise of Apolli's position and the Board's position is that they were taken by surprise by this Court's claim construction and our request for that claim construction during the first appeal. And that premise is incorrect. If you look at Appendix 3083, Apolli's admitted that we had raised the construction to the Board in the original proceeding, and, therefore, there was nothing new that required any of this additional theory modification that we saw on remand. So, Judge Chen, yes, to your point, we raised that argument, and we certainly think that that's a reason why the remand got off on the wrong foot from the outset and should have never gone where it went. So maybe that's the narrow way to do it rather than deciding what the global theories are and the line drawing for all of this stuff on what's in the petition. Your view is that the Board abused its discretion, but the sole basis, as far as we know from this record, that it allowed all this new stuff to come in was that it determined, it said quite clearly, this was never raised at the trial. So a remand is an order in that circumstance or a reversal? I mean, if the Board got that portion of it wrong, then if we tell them, theoretically, you were wrong about that, it was raised, what would you have done then with respect to the evidence? Well, and, Your Honor, to that issue, the Board already addressed that, and they answered it. So they reached the question of whether the petition on its face, as originally presented, would meet the claims in light of this Court's construction, and they ruled in Patton Owner's favor on that. So that issue has been resolved. Then they said, but we're going to additionally consider this further question of what if we could modify the prior art, and they ruled against Patton Owner on that basis. And so to your original question, yes, the cleanest way to resolve this case is to say the Board's basis for looking to the new theory was the finding that the claim construction issued by this Court was entirely new and never raised before. That finding was incorrect. The Board was therefore wrong to look to a modification on the basis. Let me just... I'm not entirely sure you addressed what I thought I was hearing as the question, but regardless. Suppose one viewed the Board decision that's now in front of us as deciding to allow the new modification of Senn basis because it viewed the claim construction as sufficiently new. Suppose we said you're wrong about the premise. Why not remand so that the Board could say, what would we allow now on the assumption, which we've been told by assumption here to accept, that this claim construction was always in dispute? So this is just as if it were a kind of plain vanilla case where the petitioner says, I proceed on this theory on this claim construction. The patent owner says, you're wrong about the claim construction. Do you in reply get to say, I've now changed the basis for my obviousness assertion, which I don't think the Board in this second decision, the one right in front of us, answered that question. Okay. So I think the last part of your question, I think I'm understanding an aspect of what you're asking about. So let me address that question as a whole in two pieces. The first piece is that the Board already contemplated the two scenarios where it's restricted to the original petition and it ruled on that scenario and the scenario where it's allowed to allow a new theory and it ruled on that scenario. And so if this court were to find the Board was wrong in its basis for allowing the new theory and that it was restricted to the petition, there would be nothing to remand because that's been decided. If, however, you're asking, is there a determination for the Board as to whether it should still allow a new theory if its basis for allowing that new theory on remand was incorrect, I don't think that this court needs to remand for that question because there's no precedent at the Board and there's no statute, there's never even been an argument by the appellee that there's any basis for the Board to allow a new theory of this kind. In the absence of a change. Correct. But did you tell me early a few minutes ago that the Board actually said that? That if, in fact, this had been raised or whatever, we would not allow the new evidence? No, Your Honor. What I was saying, yes. So they didn't address that? They addressed the implication of the construction on the existing theory that was discussed in the initial trial and then they addressed the scenario where a modification could be allowed. Thank you. We thank both sides for taking the subpoena that concludes our proceedings. Thank you.